```
                    UNITED STATES DISTRICT COURT
                         DISTRICT OF NEVADA
                           RENO, NEVADA


PATRICIA BARNES,                    )    3:10-cv-00528-ECR-RAM
                                    )
     Plaintiff,                     )
                                    )
vs.                                 )    Order
                                    )
NATIONAL COUNCIL OF JUVENILE &      )
FAMILY COURT JUDGES, FUND, INC.,    )
a Nevada non-profit corporation,    )
                                    )
     Defendant.                     )
                                    )
                                    )
```

This case arises out of allegations of age discrimination and wrongful termination. Now pending is Defendant's Motion for Summary Judgment (#25).

### I. Factual Background

Defendant National Council of Juvenile & Family Court Judges ("Defendant" or "the Council") employed Plaintiff Patricia Barnes ("Plaintiff" or "Barnes") as an attorney in the Family Violence Department from December 1, 2008 to September 30, 2009. (Compl. ¶ 1 (#1); Mot. Summ. J. at 1 (#25).) The Council is a non-profit organization with a focus on improving juvenile and family court practice in the handling of cases involving children and their families. (Mot. Summ. J. at 1 (#25).)

In June 2008, Plaintiff applied for a position in the Council's Family Violence Department. (Barnes Dep. 77:18-21(#25-2).) Family Violence Department Director Maureen Sheeran recommended Plaintiff for hire after interviewing Plaintiff. (Sheeran Decl. ¶ 5 (#25-5).) Plaintiff was fifty-eight (58) years of age when hired by the Council. (Barnes Dep. 72:21-25 (#25-2).)

The Council assigned Katheryn Yetter, a Senior Attorney in the Family Violence Department, to supervise Plaintiff. (Yetter Decl. ¶ 5 (#25-7).) Yetter was in her late thirties when she supervised Plaintiff. (Id. ¶ 3.) Plaintiff testified that based on Yetter's description of her experience, Barnes concluded that she probably had a lot more experience than Yetter had, and felt that it was difficult for Yetter to work with her because of Plaintiff's age. (Barnes Dep. 112:7-15; 113:19-114:16 (#25-2).)

Seventeen days into Plaintiff's employment, on December 17, 2008, Plaintiff requested by e-mail to work from home due to a doctor's appointment. (Id. 142:5-19; Yetter Decl. ¶ 7 (#25-7).) Yetter responded to Plaintiff by explaining that as a general rule, the Council did not allow employees to work from home, but if Plaintiff did so she should note on her time sheet what she worked on. (Yetter Decl. ¶ 7 (#25-7).) Plaintiff replied that as a "mid-career professional who works hard and has a record of achievement to show for it," she "did not want to be micromanaged." (Id.; Yetter Decl. Ex. A at 2 (#25-8).) With respect to this incident, Plaintiff testified that she felt Yetter "was demanding total subservience," that Plaintiff, based in part on her age, refused to give to Yetter. (Barnes Dep. 147:15-20 (#25-2).)

1  Also in December 2008, Plaintiff asked Yetter about taking a
2 couple of days to work from home around the holidays which Yetter
3 said would not be possible because Plaintiff had not yet accrued
4 time off.  (Barnes Dep. 138-39 (#25-2); Yetter Decl. ¶ 8 (#25-7).)
5 Plaintiff felt that she deserved the days off because she had spent
6 twenty to thirty hours of time at a conference "that was not
7 compensated" because she was an exempt employee who was not entitled
8 to overtime.  (Barnes Dep. 139-40 (#25-2).)  After Yetter denied her
9 request, Plaintiff went to Sheeran, who explained that the Council
10 does not have "comp time," and expects exempt employees to travel to
11 conferences and other events without receiving overtime pay or
12 additional time off.  (Sheeran Decl. ¶ 6 (#25-5).)  Sheeran,
13 however, granted Plaintiff special leave because of Plaintiff's
14 explanation of her family issues, which Yetter did not have the
15 authority to do.  (Id.)
16  In March 2009, Plaintiff again asked for time off that she had
17 not accrued, and when Yetter denied the request, sent an email to
18 Yetter's supervisor, Assistant Director Ruby White Starr,
19 complaining about the issue.  (Yetter Decl. ¶ 9 (#25-7); Yetter
20 Decl. Ex. B (#25-8).)  Plaintiff's email was entitled "a gripe,
21 complaint and some more general whining," and stated that "[g]iven
22 the fact that [Plaintiff] works[s] so hard for this organization"
23 and "bring[s] so much to the table in terms of dedication and
24 expertise," she felt frustrated that her request could not be
25 accommodated.  (Yetter Decl. Ex. B (#25-8).)
26  Plaintiff also failed to comply with Yetter's request to email
27 changes in her schedule, and to use the in/out board, a board used
28

3

1  in order to keep track of who was in the office in the event any
2  issues arose. (Yetter Decl. ¶ 10 (#25-7).)
3       Plaintiff also delayed working on the Family Violence
4  Department's "800 line," and when she started working on the "800
5  line," she repeatedly arrived late for her shifts. (Yetter Decl. ¶
6  13-14 (#25-7).) In response, Plaintiff told Yetter that if she
7  arrived within thirty minutes of her shift, she should not be
8  considered late. (Id. ¶ 14.)
9       On July 22, 2009, in response to a manager's request to
10 schedule a time to discuss an interaction they had, Plaintiff
11 responded "I don't think servile complaisance was one of the
12 requirements of my job, unless you know otherwise." (Id. ¶ 17;
13 Yetter Decl. Ex. E (#25-8); Barnes Dep. 209-210 (#25-2).)
14      In June 2009, Plaintiff disregarded Yetter's instruction that
15 her article on the shooting of Judge Weller needed to be framed
16 through the lens of the Family Violence Department. (Yetter Decl. ¶
17 19 (#25-7); Barnes Dep. 209:10-214:22 (#25-2).) Plaintiff refused
18 to change the story despite Yetter's explanation that Plaintiff's
19 time is funded with grants and the Council needs to make sure the
20 story fits within the grant. (Yetter Decl. ¶ 19 (#25-7).)
21 Plaintiff continued to characterize Judge Weller as a victim of
22 domestic violence, not an assertion that the department would make
23 or support, as he did not fit within the description the Council had
24 adopted. (Id.)
25      Sheeran worked with Plaintiff on the Synergy newsletter, which
26 the Council publishes twice a year. (Sheeran Decl. ¶ 7 (#25-5).)
27 Sheeran felt that there was a real disconnect between the way
28

                                    4

Plaintiff was writing an article and the Council's vision of the content they wanted to have, which was more context for judges, custody evaluators, or other gate keepers so that they can make better decisions for kids. (Id.)  On April 1, 2009, Sheeran received an email from outside partners with whom Plaintiff was working, raising questions about Plaintiff's draft article which they felt ignored the depth of knowledge in the field.  (Id.; Sheeran Decl. Ex. B (#25-6).)  Plaintiff's response to the concerns was "[p]ersonally, I could care less about doing this article if they don't want to collaborate."  (Sheeran Decl. Ex. B. (#25-6).)

Council positions are funded by grants received from governmental or private sources, as explained in the Council's Administrative Manual. (Sheeran Decl. ¶ 9 (#25-5).)  Because of the funding, employees are required by the Council's Time Records Policy to keep accurate records of time worked, and to record the number of actual hours worked on their time sheet under the related grant or project code for the tasks worked on during each day.  (Id.)  The policy, which Plaintiff signed to acknowledge receipt, stated that failure to comply with all aspects of the policy is cause for disciplinary action, up to and including termination.  (Barnes Dep. 132:13-22 (#25-2); Ex. 14 (#25-3).)  Plaintiff failed to comply with the policy.  (Sheeran Decl. ¶ 9 (#25-5).)  From approximately May or June 2009 forward, Sheeran and Yetter participated in verbal and written discussions with Plaintiff about the importance of understanding what the grants were, what they said, what the deliverables were, and how to know which grant to code time to based on what projects Plaintiff was working on.  (Id.; Yetter Decl. ¶ 20

5

1  (#25-7).)  Yetter repeatedly discussed with Plaintiff the need to
2  make sure that her work was appropriately accounted for in her time
3  sheet, and coded to an appropriate grant.  (Yetter Decl. ¶ 20 (#25-
4  7).)  Despite these discussions, Plaintiff continued to have
5  problems with timekeeping until the end of her employment.  (Id.;
6  Sheeran Decl. ¶ 9 (#25-5).)

7     Yetter started preparing Plaintiff's six-month performance
8  review in June 2009.  (Yetter Decl. ¶ 21 (#25-7).) Sheeran, Yetter,
9  and Kim Studebaker, the Director of Human Resources, signed off on
10 the review.  (Id.)  Plaintiff was rated as "needs improvement" in
11 every category.  (Id.; Yetter Decl. Ex. F (#25-8).)  The review
12 stated that the Council would review Plaintiff's performance in
13 thirty days in order to determine if she had improved, and that
14 failure to do so could lead to termination.  (Yetter Decl. Ex. F
15 (#25-8).)  Sheeran, Studebaker, and Yetter presented Plaintiff with
16 the review at a meeting on August 11, 2009.  (Yetter Decl. ¶ 22
17 (#25-7).)  The Council also presented Plaintiff with a warning
18 document for attendance and tardiness issues, and failure to notify
19 Yetter as expected of deviations from her work schedule.  (Id. ¶ 23;
20 Yetter Decl. Ex. H (#25-8); Sheeran Decl. ¶ 13 (#25-5).)  Plaintiff
21 was again instructed to arrive on time for her regular shifts and
22 her work on the 800 line, and to inform Yetter of any deviations
23 from her regular work schedule.  (Yetter Decl. ¶ 23 (#25-7); Yetter
24 Decl. Ex. H (#25-8).)

25    The day after her performance review, Plaintiff submitted a
26 seven-page response.  (Sheeran Decl. Ex. E (#25-6).) In her
27 response, Plaintiff mentions her difficulty working with Yetter, and
28

6

questions whether there is a generation issue between herself and Yetter.  (Id.)  Studebaker became concerned about a possible allegation of age bias and consulted with counsel about Plaintiff's claim.  (Dep. Studebaker Ex. 15 at 13-14 (#25-3).)  Studebaker decided to bring in an independent party, Bonnie Drinkwater ("Drinkwater"), to investigate Plaintiff's claim of generational bias.  (Id.)

On August 26, 2009, the Council issued Plaintiff a written warning for failure to request and obtain Yetter's approval for leave taken on August 14, 2009 and August 17, 2009.  (Sheeran Decl. ¶ 17 (#25-5); Sheeran Decl. Ex. F (#25-6).)  Sheeran and Yetter also stated that as of late August 2009, Plaintiff was still failing to record her time in an acceptable manner, with proper grant coding and sufficient level of detail.  (Sheeran Decl. ¶ 19 (#25-5); Yetter Decl. ¶ 26 (#25-7).)  Between August 20 and 25, 2009, Sheeran and Yetter had meetings and email communications with Plaintiff regarding this issue.  (Sheeran Decl. ¶ 19 (#25-5); Yetter Decl. ¶ 26 (#25-7).)  Plaintiff responded that she did not really get the need for an article that she was working on to fall within the scope of applicable grant funding.  (Sheeran Decl. ¶ 19 (#25-5); Sheeran Decl. Ex. H (#25-6).)  As of September 8, 2009, management was continuing discussions with Plaintiff regarding her timekeeping, and Plaintiff admitted that she had still not read the grants, which would have helped Plaintiff with her timekeeping issues.  (Sheeran Decl. ¶ 19; Sheeran Decl. Ex. I (#25-6).)

Based on Plaintiff's performance and continuing complaints by co-workers, Sheeran decided that Plaintiff had failed to improve to

7

a satisfactory level, and concluded that she would be unable to improve her performance to a satisfactory level in the future. (Sheeran Decl. ¶ 23 (#25-5).) Sheeran was especially worried over Plaintiff's failure to properly record her time, an issue that was of great concern to an organization that pays its employees with government funds. (Id.) Sheeran recommended Plaintiff's termination to Executive Director Mary Mentaberry, explaining the issues, and Mentaberry authorized the termination. (Id. ¶ 24.)

On September 30, 2009, the Council terminated Plaintiff in a meeting with Plaintiff, Sheeran, Studebaker, and Yetter. (Id. ¶ 25.) Plaintiff was provided with a copy of the termination paperwork, outlining the reasons for her termination. (Id.; Sheeran Decl. Ex. M (#25-6).) Plaintiff was replaced by a woman who was fifty-seven years of age, only one year younger than Plaintiff at the time of her employment. (Sheeran Decl. ¶ 26 (#25-5); Yetter Decl. ¶ 30 (#25-7).)

## II. Procedural Background

On July 27, 2010, Plaintiff filed her complaint (#1) in the Second Judicial District Court of the State of Nevada of Washoe County, claiming (1) age discrimination; (2) negligent hiring, supervision, and retention of Yetter; and (3) breach of contract. On August 24, 2010, Defendant removed (#1) the action to this Court. On December 3, 2010, the Court granted Defendant's Motion to Dismiss Second and Third Claims for Relief (#3). The only remaining claim is the first claim for age discrimination and/or retaliatory discharge.

8

On April 6, 2011, Defendant filed a Motion for Summary Judgment (#25). On June 10, 2011, Plaintiff filed her opposition (#29). On June 21, 2011, Defendant filed its reply (#30).

### III. Legal Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form--namely, depositions, admissions, interrogatory answers, and affidavits--only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. Anderson, 477 U.S. at 248. Summary judgment is not proper if material factual issues exist for trial. B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir. 1999). As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Disputes over irrelevant or unnecessary facts should not be considered. Id. Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. Id.

///
///
///

10

## IV. Discussion

### A. The ADEA Claim

The ADEA, 29 U.S.C. §§ 621 et seq., makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age. Id. at § 623(a). To prevail on an ADEA claim, the plaintiff must establish "that age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Fin. Servs., Inc., 129 S.Ct. 2343, 2351 (2009). "Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." Id. at 2349.

To establish a violation of the ADEA under the disparate treatment theory of liability at the summary judgment stage, a plaintiff "must first establish a prima facie case of age discrimination." Shelley v. Geren, 666 F.3d 599, 608 (9th Cir. 2012). If a plaintiff makes out a prima facie case, the burden of production then shifts to the defendant to articulate a "legitimate nondiscriminatory reason" for the adverse employment action. Id. Then, in order to prevail, the plaintiff must demonstrate that there is a material genuine issue of fact as to whether the employer's purported reason is pretext for age discrimination. Id. "Despite the burden shifting, the ultimate burden of proof remains always on the former employee[] to show that [defendant] intentionally discriminated because of [her] age." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir. 2000).

To establish a prima facie case using circumstantial evidence, an employee must demonstrate that she was (1) a member of the protected class (at least age forty); (2) performing her job

11

satisfactorily; (3) discharged; and (4) replaced by substantially younger employees with equal or inferior qualifications. <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 917 (9th Cir. 1997). "[V]ery little evidence is required to establish a *prima facie* case." <u>Wallis</u>, 26 F.3d at 891.

Defendant contends that Plaintiff cannot establish a prima facie case of age discrimination because she cannot show that she performed her job satisfactorily, and because she was not replaced by a substantially younger employee with equal or inferior qualifications.

1. Whether Plaintiff Performed Her Job Satisfactorily

Plaintiff has failed to create a genuine issue of material fact concerning whether she performed her job in a satisfactory manner. The evidence shows that in the months Plaintiff worked for Defendant, she failed to adhere to policies regarding timekeeping, continuously requested additional time off that she had not earned, failed to work harmoniously with her co-workers, delayed working on the department's "800 line" and then repeatedly showed up late once she began, and tended to shrug off any performance-related issues that were brought to her attention. At her six-month performance review, Plaintiff was rated as "needs improvement" in every category. Plaintiff was presented with the review and given a warning that she could be terminated if her performance does not improve, but the evidence shows that Plaintiff did not improve before her termination.

Plaintiff responds in her opposition (#29) to the Motion for Summary Judgment (#25) by summarizing her numerous achievements in

12

1  the domestic violence field, and claiming that the training provided
2  by the Council was inadequate.  Plaintiff also argues that
3  Plaintiff's failure to follow procedure was a result of unclear
4  direction and changing procedures.  The evidence shows, however,
5  that Plaintiff did not follow instructions or attempt to comply with
6  training.  See, e.g., Sheeran Decl. ¶ 9 (#25-5); Yetter Decl. ¶¶ 6,
7  13, 19, 20 (#25-7).  Notably, Plaintiff is unable to provide any
8  evidence that challenges Defendant's overwhelming evidence that
9  Plaintiff performed poorly, did not get along with other employees,
10 and refused to listen to instructions or criticism regarding any
11 perceived problems.
12     On the basis of the evidence presented, we find that no
13 reasonable juror could find that Plaintiff's performance was
14 satisfactory.  See Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201,
15 1208 (9th Cir. 2008) (citing a case in which the court held that
16 "[a] plaintiff who violates company policy and fails to improve his
17 performance despite a warning has not demonstrated satisfactory
18 performance." Mungro v. Giant Food, Inc., 187 F.Supp.2d 518, 522 (D.
19 Md. 2002).)
20     2. Whether the Circumstances Give Rise to an Inference of Age
21 Discrimination
22     While Plaintiff's failure to satisfy the performance factor of
23 a prima facie case of age discrimination requires that we grant
24 summary judgment on her claim, we briefly address other
25 circumstances also contributing to our conclusion that Plaintiff is
26 not entitled to proceed on her age discrimination claim.  After
27 interviewing, Plaintiff was hired by the recommendation of Sheeran
28

when Plaintiff was fifty-eight (58) years of age.  Plaintiff started working for Defendant on December 1, 2008.  She was terminated from her job on September 30, 2009, also by recommendation of Sheeran.  After Plaintiff's termination, Defendant replaced Plaintiff with a woman who is fifty-seven (57) years of age, only one year younger than Plaintiff.  While Plaintiff's replacement was not a lawyer, she had background in domestic violence work.

Simply, the circumstances of this case, even setting aside the issue of Plaintiff's performance-related issues, do not give rise to an inference that age discrimination is the reason Plaintiff was terminated.  She was hired at age fifty-eight (58) and terminated in less than a year, both on Sheeran's recommendation.  Plaintiff's replacement was not substantially younger, in fact, she was approximately the same age as Plaintiff.  The Ninth Circuit has noted that "[t]he temporal proximity between [Plaintiff's] hiring and layoff also makes it unlikely that age later developed as the reason for the discharges."  Diaz, 521 F.3d at 1209.  The difference in age between Plaintiff and her replacement "is not significant enough to warrant an inference of anything but the most arbitrary bias."  Id. (discussing the difference in physical and mental capacity between an average 65 year-old and an average 66 year-old).  Furthermore, "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive."  Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270-71 (9th Cir. 1996).

14

Therefore, Plaintiff has failed to show that there is a triable issue of fact over her age discrimination claim, and summary judgment must be granted on her age discrimination claim.

**B. Retaliation Claim**

Plaintiff's complaint (#1) alleges that "[a] reasonable inference exists that Plaintiff was fired for reporting age discrimination and/or for her age." We construe this language to plead a separate retaliation claim, although both are contained within Plaintiff's first cause of action in the complaint. In order to plead a retaliatory discharge claim, a plaintiff must file an Equal Employment Opportunity Commission ("EEOC") charge challenging the unlawful employment practice under the ADEA prior to pursuing a civil action. 29 U.S.C. § 626(d)(1).

Barnes' EEOC charge does not check the box for retaliation, nor does it allege retaliatory discharge. It alleges only that Defendant discriminated against Plaintiff on the basis of age. Also, even were we to find that Plaintiff exhausted her administrative remedies before filing a claim of retaliatory discharge, the evidence does not support such a claim.

To establish a prima facie case of retaliation under the ADEA, Plaintiff must show that "[she] engaged in a protected activity, [her] employer subjected [her] to adverse employment action, and there is a causal link between the protected activity and the employer's action." Nidds v. Schindler Elevator Corp., 113 F.3d 912, 919 (9th Cir. 1996) (quoting Flait v. North Am. Watch Corp., 4 Cal. Rptr. 2d 522, 528 (Cal. Ct. App. 1992)). The protected activity forming the basis of a retaliatory discharge claim appears

15

to be Plaintiff's alleged concern about possible generational bias in her response to her poor performance review of August 2009. Plaintiff has failed to present evidence of a causal link between her termination and that protected activity.  While Plaintiff had made a few stray comments about Yetter's age from the beginning, any retaliation likely would have been a result of Plaintiff's complaint in her response to the performance review.  By the time Plaintiff raised concerns of generational bias, Plaintiff had already been given a warning that she may be terminated after a thirty-day review if her performance does not improve.  Plaintiff has failed to show that there is a genuine issue of material fact concerning whether the termination was a result of her complaint rather than her poor performance.

## V. Conclusion

Plaintiff has failed to show that there is a triable issue of fact over her age discrimination and retaliatory discharge claims, and summary judgment must be granted in Defendant's favor.

**IT IS, THEREFORE, HEREBY ORDERED** that Defendant's Motion for Summary Judgment (#25) is **GRANTED** on Plaintiff's first cause of action for age discrimination and retaliation.  There are no remaining claims.

The Clerk shall enter judgment accordingly.

DATED: February 22, 2012.

_____
UNITED STATES DISTRICT JUDGE

16